# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOLLY MCCLURE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 12-230** |
| | ) **Chief Judge Gary L. Lancaster** |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster
Chief Judge                                November $\underline{\quad 9 \quad}$, 2012

## I.   Introduction

Plaintiff Dolly McClure ("McClure") brings this action
pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial
review of the final decision of the Commissioner of Social
Security ("Commissioner") denying her applications for
disability insurance benefits ("DIB") and supplemental security
income ("SSI") benefits under Titles II and XVI of the Social
Security Act ("Act") [42 U.S.C. §§ 401-433, 1331-1383f].  The
matter is presently before the Court on cross-motions for
summary judgment filed by the parties pursuant to Federal Rule
of Civil Procedure 56.  (ECF Nos. 11 & 13).  For the reasons
that follow, the Commissioner's motion for summary judgment (*ECF
No. 13*) will be denied.  McClure's motion for summary judgment

1

(*ECF No. 11*) will be denied to the extent that it requests an
award of benefits but granted to the extent that it seeks a
vacation of the Commissioner's decision, and a remand for
further proceedings. The decision of the Commissioner will be
vacated, and the case will be remanded to him for further
consideration of McClure's applications for DIB and SSI
benefits.

## II. Procedural History

McClure protectively applied for DIB and SSI benefits on
June 30, 2009, alleging that she had become "disabled" on
October 30, 2005. (R. at 24, 137, 146). The Pennsylvania
Bureau of Disability Determination ("Bureau") denied the
applications on January 29, 2010. (R. at 69, 75, 81, 87).
McClure responded on March 3, 2010, by filing a timely request
for an administrative hearing. (R. at 94-95). On April 26,
2011, a hearing was held in Seven Fields, Pennsylvania, before
Administrative Law Judge ("ALJ") Douglas Cohen. (R. at 42).
McClure, who was represented by counsel, appeared and testified
at the hearing. (R. at 46-59). At the suggestion of her
counsel, McClure amended her alleged onset date to July 1, 2009.
(R. at 58-59). Patricia J. Murphy ("Murphy"), an impartial
vocational expert, also testified at the hearing. (R. at 59-
63). In a decision dated May 16, 2011, the ALJ determined that

2

McClure was not "disabled" within the meaning of the Act. (R. at 21-36).

On June 9, 2011, McClure sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 19). The Appeals Council denied the request for review on January 27, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). McClure commenced this action on February 24, 2012, seeking judicial review of the Commissioner's decision. (ECF Nos. 1 & 4). McClure and the Commissioner filed motions for summary judgment on July 9, 2012, and August 13, 2012, respectively. (ECF Nos. 11 & 13). These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its

intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 353, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she]

4

is not only unable to do his [or her] previous work but cannot,
considering his [or her] age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A),
1382c(a)(3)(B).

To support his or her ultimate findings, an administrative
law judge must do more than simply state factual conclusions.
He or she must make specific findings of fact. *Stewart v.
Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d
Cir. 1983). The administrative law judge must consider all
medical evidence contained in the record and provide adequate
explanations for disregarding or rejecting evidence. *Weir on
Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984);
*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant
to its legislatively-delegated rulemaking authority, has
promulgated a five-step sequential evaluation process for the
purpose of determining whether a claimant is "disabled" within
the meaning of the Act. The United States Supreme Court
recently summarized this process by stating as follows:

> If at any step a finding of disability or non-
> disability can be made, the SSA will not review the
> claim further. At the first step, the agency will
> find non-disability unless the claimant shows that he
> is not working at a "substantial gainful activity."
> [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two,

the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

6

> When the case was first here, we emphasized a simple
> but fundamental rule of administrative law. That rule
> is to the effect that a reviewing court, in dealing
> with a determination or judgment which an
> administrative agency alone is authorized to make,
> must judge the propriety of such action solely by the
> grounds invoked by the agency. If those grounds are
> inadequate or improper, the court is powerless to
> affirm the administrative action by substituting what
> it considers to be a more adequate or proper basis.
> To do so would propel the court into the domain which
> Congress has set aside exclusively for the
> administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of

Appeals for the Third Circuit has recognized the applicability

of this rule in the Social Security disability context.

*Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).

Thus, the Court's review is limited to the four corners of the

ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491

(W.D.Pa. 2005).

## IV. The ALJ's Decision

In his decision, the ALJ determined that McClure had not

engaged in substantial gainful activity subsequent to her

amended onset date. (R. at 26). McClure was found to be

suffering from right shoulder impingement syndrome, a torn right

rotator cuff, fibromyalgia, obesity, asthma, right lower

extremity problems, left lower extremity neuropathy, an

adjustment disorder (with a mixed and depressed mood), and a

personality disorder. (R. at 26-27). Her right shoulder

7

impingement syndrome, torn right rotator cuff, fibromyalgia, obesity, asthma, right lower extremity problems and left lower extremity neuropathy were deemed to be "severe" under the Commissioner's regulations. (R. at 26); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that McClure's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 28-29).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed McClure's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasional climbing of ramps and stairs only, balancing, stooping, crouching, crawling and kneeling. The claimant is limited to no overhead work or overhead reaching with the right dominant right [sic] upper extremity and no work above shoulder level with the dominant right upper extremity. The claimant is limited to no more [sic] sedentary lifting and carrying with the dominant right upper extremity. In addition, the claimant must avoid concentrated exposure to dust, fumes, odors, gases, environments with poor ventilation, wetness, humidity and temperature extremes.

---

[1] The term "residual functional capacity" is defined as 'that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

8

(R. at 29). McClure had "past relevant work"[2] experience as an inspector/packer, a telemarketer, and a gas station attendant. (R. at 60-61). Murphy classified the inspector/packer and telemarketer positions as "semi-skilled"[3] jobs at the "light"[4] and "sedentary"[5] levels of exertion. (R. at 6C). She categorized the gas station attendant position as a "skilled"[6]

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).
[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[6] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

job at the "medium"[7] level of exertion. (R. at 60). In response
to a hypothetical question describing an individual with the
abilities and limitations incorporated within the ALJ's residual
functional capacity assessment, Murphy testified that such an
individual could work as a telemarketer. (R. at 61).
Therefore, it was determined that McClure could return to her
past relevant work. (R. at 34).

McClure was born on March 17, 1967, making her forty-two
years old on her amended onset date and forty-four years old on
the date of the ALJ's decision. (R. at 34, 137, 146). She was
classified as a "younger person" under the Commissioner's
regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had a
college education and an ability to communicate in English. (R.
at 34, 46, 175, 181); 20 C.F.R. §§ 1564(b)(4)-(5),
416.964(b)(4)-(5). Given the applicable residual functional
capacity and vocational assessments, the ALJ made the
alternative finding that McClure could work as a call out
operator, an usher, or a parking lot cashier. (R. at 35).
Murphy's testimony established that these jobs existed in the
national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and
1382c(a)(3)(B).[8] (R. at 61-62).

---

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent
lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§
404.1567(c), 416.967(c).
[8] At the fifth step of the sequential evaluation process, "the Commissioner
bears the burden of proving that, considering the claimant's residual

10

## V. Discussion

During the fall of 2009, McClure experienced pain in her right shoulder. (R. at 231). Dr. Robert M. Woods, an orthopedic surgeon, examined McClure on December 14, 2009. (R. at 250). He determined that McClure was suffering from right shoulder impingement syndrome and administered a cortisone injection to alleviate her symptoms. (R. at 250).

On December 31, 2009, Dr. Robert C. Luderer performed a consultative physical examination of McClure in connection with her applications for DIB and SSI benefits. (R. at 251-260). Based on the findings of his examination, Dr. Luderer reported that McClure could lift or carry no more than ten pounds with her right hand, but that she had no lifting or carrying limitations in her left hand. (R. at 251). In addition, Dr. Luderer indicated that McClure could not be exposed to hot temperatures, dust, fumes, odors, gases, or other airborne contaminants. (R. at 252).

Dr. Reynaldo M. Torio, a non-examining medical consultant, opined on January 29, 2010, that McClure was physically capable of performing a range of "light" work activities that did not involve overhead reaching with her right arm. (R. at 268). In

---

functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

the narrative portion of his consultative report, Dr. Torio stated that the treatment for McClure's physical impairments had been "routine and conservative in nature." (R. at 272). He found her subjective complaints of disabling pain to be only "partially credible." (R. at 272).

A nerve conduction electroneuromyography ("EMG") study conducted on March 1, 2010, did not uncover evidence of neuropathy, axonopathy or radiculopathy in McClure's shoulder. (R. at 273). Dr. Ronni L. Needham, McClure's primary care physician, ordered a magnetic resonance imaging ("MRI") scan to evaluate her shoulder pain. (R. at 308). The MRI scan, which was performed on August 24, 2010, revealed that McClure had a focal tear in her supraspinatus tendon. (R. at 308).

On September 21, 2010, Dr. Woods performed an arthroscopic subacromial decompression on McClure's right shoulder. (R. at 311-312). A "partial bursal-sided rotator cuff tear" was found. (R. at 311). Although Dr. Woods debrided the area, he apparently decided not to surgically fix the tear. (R. at 51, 311). A subsequent course of physical therapy failed to improve McClure's shoulder pain. (R. at 53).

Dr. William J. Fernan performed a consultative psychological evaluation of McClure on March 25, 2010. (R. at 278-286). Based on the findings of the evaluation, Dr. Fernan found McClure to be "markedly" limited in her abilities to

12

respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. (R. at 285). McClure was deemed to be "moderately" limited in her abilities to carry out instructions[9] and interact appropriately with supervisors. (R. at 285). Dr. Fernan observed that McClure had "developed significant anxiety, depression and feelings of agitation" because of her physical condition. (R. at 284).

On January 14, 2011, Dr. Woods detailed McClure's alleged physical limitations in a "medical source statement." (R. at 303-307). He predicted that pain would frequently interfere with McClure's "attention and concentration," making it difficult for her to "perform even simple work tasks." (R. at 304). Dr. Woods indicated that McClure could never lift or carry objects weighing twenty pounds, rarely lift or carry objects weighing ten pounds, and occasionally lift or carry objects weighing less than ten pounds. (R. at 305). He clarified that these limitations were applicable only to McClure's right arm. (R. at 303). No limitations were identified with respect to McClure's sitting, standing and walking abilities. (R. at 305). McClure was deemed to be precluded from climbing ladders and limited to only occasional

---

[9] This perceived limitation applied to "short, simple instructions" as well as to "detailed instructions." (R. at 285).

13

stooping, bending, crouching, squatting and stair-climbing. (R. at 306). Dr. Woods opined that if McClure were to be employed on a full-time basis, her impairments would cause her to miss more than four days of work per month. (R. at 306). In response to a question posed by McClure's counsel, Murphy testified that no jobs existed in significant numbers in the national economy for an individual who needed to miss more than one day of work per month.[10] (R. at 63).

Dr. Robert G. Ranelle surgically repaired McClure's right rotator cuff on March 14, 2011. (R. at 362-366). McClure apparently sought treatment from Dr. Ranelle because the operation previously performed by Dr. Woods had failed to correct the problem. (R. at 51-52). At the time of the hearing, McClure was still recuperating from the second operation. (R. at 53).

The Act permits a "State agency" to make the initial determination as to whether a claimant is "disabled." 42 U.S.C. § 421(a)(1). As noted earlier, McClure's applications for DIB and SSI benefits were denied by the Bureau on January 29, 2010. (R. at 69, 75, 81, 87). In support of her motion for summary judgment, McClure contends that the Commissioner failed to

---

[10] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

14

comply with 42 U.S.C. § 421(h). (ECF No. 12 at 6). That provision provides that, "in any case where there is evidence which indicates the existence of a mental impairment," an "initial determination" denying the claimant's application for benefits "shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h). McClure posits that the Commissioner violated this mandate by denying her applications without having "a qualified psychiatrist or psychologist" review the documentary evidence. (ECF No. 12 at 6).

When McClure submitted her applications for benefits, she did not allege "the existence of a mental impairment." 42 U.S.C. § 421(h); (R. at 176). Dr. Fernan's psychological evaluation of McClure did not occur until March 25, 2010. (R. at 278). The Bureau's decision denying McClure's applications for benefits preceded the evaluation by almost two months. (R. at 69, 75, 81, 87). When that "initial determination" was made, the record contained no evidence of a mental impairment. The language of § 421(h) relied upon by McClure applies only to such an "initial determination." 42 U.S.C. § 421(h). When a claimant who is unsuccessful before a "State agency" requests an

15

administrative hearing, his or her claim is governed by a
different statutory provision. 42 U.S.C. § 421(d).[11] Therefore,
§ 421(h)'s mandate was never triggered in this case.

McClure testified that she had never received mental health
treatment or taken medication for depression. (R. at 53). The
ALJ concluded that McClure's adjustment and personality
disorders were "non-severe."[12] (R. at 27). He rejected the
"marked" limitations identified by Dr. Fernan on the ground that
they were "completely without support in the record." (R. at
28). The ALJ's residual functional capacity assessment (and
corresponding hypothetical question to Murphy) did not include
limitations attributable to McClure's mental impairments. (R.
at 29, 59-60). McClure argues that the ALJ erred in failing to
account for limitations resulting from those impairments. (ECF
No. 12 at 10-13).

---

[11] The statutory mandate of 42 U.S.C. § 421(h) applies to determinations made
under subsections (a), (c), (g) and (i), but not to those made under
subsection (d). Because Dr. Fernan's examination report was completed after
McClure had already requested an administrative hearing, the review
prescribed by subsection (h) was not required. 42 U.S.C. § 421(d), (h).
[12] The second step of the sequential evaluation process is relatively easy for
a claimant to surmount. *McCrea v. Commissioner of Social Security*, 370 F.3d
357, 360-361 (3d Cir. 2004). McClure argues that the ALJ erred in finding
her mental impairments to be "non-severe." (ECF No. 12 at 10). Since
McClure's physical impairments caused her case to progress beyond the second
step of the analysis, the ALJ's conclusion that McClure had no "severe"
mental impairments was itself inconsequential. *Maziarz v. Secretary of
Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). The important
question is whether the limitations resulting from McClure's mental
impairments were incorporated within the ALJ's residual functional capacity
assessment, irrespective of whether those impairments should have been
characterized as "severe" impairments. 20 C.F.R. §§ 404.1545(a)(2),
416.945(a)(2).

16

Although the ALJ was not required to obtain the consultative "case review" referenced in § 421(h), he was free to reject Dr. Fernan's opinion outright only on the basis of countervailing medical evidence. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). When McClure's case was before the ALJ, Dr. Fernan's examination report was contained in the record. (R. at 278-286). While McClure's failure to allege the existence of a mental impairment at an earlier stage (or to seek treatment for such an impairment) may have weighed against Dr. Fernan's findings to some extent, the ALJ did not have the option of employing his own expertise against that of Dr. Fernan. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In order to reject Dr. Fernan's opinion, the ALJ was required to rely on competent medical evidence supplied by a qualified professional. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

Dr. Fernan opined that McClure "would experience an exacerbation of her physical problems with stress." (R. at 284). The alleged "marked" limitations concerning McClure's abilities to respond appropriately to work pressures in a usual work setting and respond to changes in a routine work setting must be viewed in this context. (R. at 285). In this respect, the record suggests that a link exists between McClure's physical and mental impairments.

On January 14, 2011, Dr. Woods indicated that "emotional factors" did not "contribute to the severity" of McClure's "symptoms and functional limitations." (R. at 304). Nonetheless, he went on to state that McClure was capable of performing the duties of only "low stress jobs." (R. at 304). Dr. Woods did not believe McClure to be capable of performing "high stress work." (R. at 304). The assessments provided by Dr. Luderer and Dr. Torio related only to McClure's physical impairments, without regard to whether the limitations resulting from those impairments would be exacerbated by "stress." (R. at 251-260, 266-272). Furthermore, those assessments were completed before McClure underwent surgery to alleviate the pain in her shoulder. At the hearing, McClure testified that her "condition had deteriorated" after the operation of September 21, 2010. (R. at 53).

Although the ALJ carefully weighed the evidence pertaining to McClure's physical limitations, he did not account for the impact that work-related stress would have on her condition. (R. at 29-34). The ALJ apparently rejected Dr. Woods' assertion that McClure was limited to "low stress jobs" because he believed that limitation to be "totally unrelated" to the shoulder impairment for which Dr. Woods had provided treatment. (R. at 33). The problem with that line of reasoning is that both Dr. Fernan and Dr. Woods believed McClure to be incapable

18

of working in a stressful environment. (R. at 285, 304). No medical professional suggested that McClure was mentally capable of enduring high levels of stress. *Doak*, 790 F.2d at 29.

Since the ALJ did not factor McClure's need to avoid stress into his residual functional capacity assessment, his decision is not supported by substantial evidence. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-506 (3d Cir. 2009). The remaining question is whether benefits should be awarded at this time, or whether the proper remedy is a remand for further development of the record. A judicially-ordered award of benefits is warranted only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). McClure cannot satisfy this standard on the basis of the existing record. Even if Dr. Fernan's examination report is assumed to be correct, it does not inevitably point to a finding of disability. It is certainly conceivable that jobs involving few workplace changes and limited exposure to "usual" work pressures may exist in the national economy. (R. at 285). Given the link between McClure's physical and mental impairments, the "work pressures" that she would face may decrease as the accommodations for her physical limitations increase. (R. at 284, 304). The determination as to whether

19

McClure's impairments are disabling turns on whether the limitations resulting from her medical problems collectively preclude the performance of substantial gainful activity. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Additional testimony from a vocational expert would help to facilitate the correct resolution of that issue.[13] *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

McClure maintains that the ALJ failed to properly account for the "reaching" limitations resulting from her shoulder impairment. (ECF No. 12 at 14-16). The ALJ concluded that McClure could perform "no work above shoulder level with the dominant right upper extremity." (R. at 29). According to McClure, this restriction did not account for her alleged inability to "reach" in other directions. (ECF No. 12 at 16). In view of the fact that a remand is required for other reasons, the Court has no occasion to consider whether the ALJ's residual functional capacity assessment adequately accounted for McClure's shoulder injury. *Reefer v. Barnhart*, 326 F.3d 376, 381 (3d Cir. 2003). It suffices to say that the Commissioner must afford McClure "an opportunity to be heard" on all outstanding factual issues during the course of the upcoming

---

[13] Because the ALJ's hypothetical question to Murphy did not account for McClure's need to avoid stressful work environments, it is not clear whether the telemarketer, call out operator, usher and parking lot cashier jobs discussed by Murphy would require the performance of stressful tasks. (R. at 59-62).

20

administrative proceedings. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010).

**VI. Conclusion**

For the foregoing reasons, the Commissioner's motion for summary judgment (*ECF No. 13*) will be denied. McClure's motion for summary judgment will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further consideration of McClure's claims. The decision of the Commissioner will be vacated, and the case will be remanded to him for further proceedings.

AND NOW, this ___9___ day of November, 2012, IT IS HEREBY ORDERED that the Defendant's motion for summary judgment (*ECF No. 13*) is **DENIED**, and that the Plaintiff's motion for summary judgment (*ECF No. 11*) is **DENIED** insofar as it seeks an award of benefits but **GRANTED** insofar as it seeks a vacation of the Commissioner's "final decision." The decision of the Commissioner is hereby **VACATED**, and the case is **REMANDED** to him for further consideration of the Plaintiff's applications for benefits.

BY THE COURT:

Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All counsel of record

21